**TEXAS BITULITHIC COMPANY,**
Appellant,

v.

**CATERPILLAR TRACTOR COMPANY,**
Appellee.

No. 15997.

Court of Civil Appeals of Texas.

Dallas.

April 6, 1962.

Rehearing Denied May 11, 1962.

Brundidge, Fountain, Elliott & Bateman, Harold A. Bateman, Dallas, for appellant.

Malone, Seay & Gwinn, Robert A. Gwinn, Dallas, for appellee.

DIXON, Chief Justice.

This is an appeal from a summary judgment in favor of a third party defendant, Caterpillar Tractor Company, appellee here. The suit seeks to hold appellee liable for breach of warranty and negligence in the design and manufacture of a large, heavy piece of equipment known as a maintainer.

The litigation originated when plaintiff Ange Lee Roe, widow of John Roe, Sr. deceased, and Alonzo Odom, Guardian of the six minor children of Ange Lee Roe and John Roe Sr., sued appellant Texas Bitulithic Company for damages for the wrongful death of John Roe, Sr. The deceased was killed when he was run over by a No. 12 Maintainer, operated at the time by an employee of appellant.

Appellant Texas Bitulithic Company, impleaded Caterpillar Tractor Company, manufacturer of the maintainer, as a third party defendant, praying for judgment over against appellee in the event judgment should be rendered in favor of plaintiffs against appellant.

Appellee as third party defendant answered denying any breach of warranty, denying any negligence in the design and manufacture of the maintainer, and alleging that there had been no contractual relations between appellant and appellee. Appellee also pled the defense of volenti non fit injuria and incurred risk.

Appellee filed a motion for summary judgment. The motion was sustained. A judgment was entered in favor of appellee that appellant take nothing by its third party action. Later the cause of action of Ange Lee Roe and Alonzo Odom, Guardian, against appellant Texas Bitulithic Company was settled for $21,000, thus disposing of all parties to the litigation. In the final judgment it was stipulated that appellant by its settlement with the original plaintiffs did not waive its action against appellee as third party defendant. This appeal involves only summary judgment in favor of appellee.

FACTS

The evidence in this case consists of the answers of appellee to requests for admissions, and the depositions of several witnesses.

The physical facts are established by uncontradicted evidence. If there are any fact issues they must rest on inferences to be drawn from the established physical facts. However, the contentions of the parties call for a somewhat detailed statement of the facts.

The accident occurred December 9, 1959. The maintainer which was being operated by Eugene Hanks, appellant's employee, was being used to level out earth in connection with "back filling a curb" in a new industrial real estate development which was being laid out. The machine was being operated backward and forward to utilize a large blade in the middle and under part of the machine. The blade is 12 feet long and 18 inches high. It can be placed in various positions. It can be put into a position straight across, or slanting, or parallel with the maintainer. It can be raised or lowered.

On the occasion in question Hanks had placed the blade in a slanting position from front to rear. He had also elevated the blade so that it would go over a concrete curb. While in this position, which was a somewhat unusual but not an abnormal position, the blade was so placed as to block the throttle. The machine was so designed. This fact was unknown to Hanks.

The deceased, John Roe Sr., was digging a small excavation about three feet square and two feet deep which was to serve as an inlet beneath the curb for the drainage of water. Hanks was backing the maintainer toward the place where Roe was working. When about ten or fifteen feet away he tried to stop the machine. He attempted to release the throttle and apply foot brake, but the throttle was blocked by the blade. The maintainer continued on its path despite Hanks' efforts to stop. It ran into and over the body of Roe, killing him.

■ The maintainer had been manufactured in the year 1948 by Caterpillar Tractor Company. It had been sold that year to a purchaser named Skinner, a contractor in Austin, Texas. Some time thereafter the machine came into the possession of R. B. George Equipment Company. The latter Company sold the machine on or about January 9, 1953 to appellant Texas Bitulithic Company. There was no privity of contract between the latter company and the Caterpillar Tractor Company.

Texas Bitulithic Company maintains a central machine shop as well as field mechanics for the maintenance and repair of its equipment. This maintainer had been repaired several times. It had been taken apart and reassembled at times in the course of being repaired and maintained, but its design had not been changed.

Hanks, 24 years of age, the operator of the machine testified that no one had told him or warned him that the throttle would be blocked when the blade was raised to a certain elevation in a certain position. He did not know it. He had been employed by appellant as a maintainer operator a little over a year.

Lloyd Chapman, supervisor and general foreman over Hanks, had been employed by appellant over eight years. He gave Hanks instructions about being cautious. He knew the machine was so designed and constructed that the throttle would be blocked when the blade was placed in the position where Hanks had placed it. It had happened to him one time several years before. He did not inform Hanks or warn him about it at safety meetings or elsewhere.

Wilson Byers, foreman over Hanks, had been employed since 1949 by appellant except for a term in the military service. He had been four years a foreman. He did not know that the blade in a certain position would block the clutch. Regular safety meetings were held but the matter had never been mentioned at a safety meeting.

Jack Dunn, foreman for five years and former maintainer operator, knew that the blade if placed in a certain position would block the clutch. It had happened twice to him while he was operating a maintainer of the same model. Regular safety lectures were given to appellant's employees, but no instructions or warning had ever been given to the employees in regard to the blade's blocking the clutch when in a certain position.

J. T. Williams, Jr. field mechanic, employee of appellant 19 years, knew that the blade could be put in position where it would block the throttle. He had repaired the machine, putting in clutches. After this accident appellant's mechanics installed a safety device, a bar, on all its maintainers so that the blade cannot now be raised high enough to block the clutches on the machines.

## OPINION

Appellant's action is based on its claim that appellee was negligent in the manner of planning or designing the No. 12 Maintainer. It is not contended that there was any failure, malfunction or breakage of any part of the machine.

Appellant's first three points on appeal allege in substance that the court erred in rendering the summary judgment be-

cause there were controverted issues of fact as to negligence and proximate cause (1) in so designing the maintainer that the blade thereon could be placed in a position where it would be impossible to depress the clutch pedal and thus disengage the clutch and place the gears in a neutral position while attempting to stop the machine by the use of the brakes; (2) in manufacturing and placing on the market the maintainer designed as above stated; and (3) in failing to install a metal bar across and in front of the clutch pedal to prevent the blade from blocking the clutch pedal.

The law pertaining to the liability of a manufacturer for injuries suffered by third parties not in privity of contract with the manufacturer has undergone great changes over the years. Originally it was held that a manufacturer under such circumstances was not liable for its negligence in the manufacturing and marketing of its product. Later the manufacturer was held liable for its negligence in the manufacture of articles inherently dangerous and destructive, such as poisons, explosives and weapons. Still later liability was extended to include articles not inherently dangerous, but which due to a defect in materials or workmanship, became imminently dangerous when used for the purpose for which they were intended. And in comparatively recent years liability has been still further extended to include articles which are not defective as to the quality of materials or workmanship, but are so designed that they are dangerous when used for their intended purpose by persons who are not aware of the danger in the design.

Space will permit us to name only a few of the numerous authorities through whom this expanded liability may be traced and studied. Flies v. Fox Bros. Buick Co., 196 Wis. 196, 218 N.W. 855, 857, 60 A.L.R. 357; MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050; Smith v. Atco Co., 6 Wis.2d 371, 94 N.W.2d 697.

The subject is discussed with annotations in 65 C.J.S. Negligence § 100, p. 618–638; 46 Am.Jur. § 812, page 61 of 1961 Cumulative supplement; 39 A.L.R. 992–994; 74 A.L.R.2d 1111.

We believe that a correct statement of the present rule pertaining to a manufacturer's liability is to be found in "Restatement of the Law of Torts" § 395, p. 1073, and § 398, p. 1084. We quote § 398:

> "A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel lawfully or to be in the vicinity of its probable use for bodily harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design."

The above statement seems to us to find support in these cases: S. Blickman, Inc. v. Chilton, Tex.Civ.App., 114 S.W.2d 646; Johnson v. Murray Co., Tex.Civ.App., 90 S.W.2d 920; Armstrong Packing Co. v. Clem, Tex.Civ.App., 151 S.W. 576; Darling v. Caterpillar Tractor Co., 171 Cal. App.2d 713, 341 P.2d 23, 27; Brooks v. Allis-Chalmers Mfg. Co., 163 Cal.App.2d 410, 329 P.2d 575; Matthews v. Lawnlite, Fla., 88 So.2d 299; Smith v. Atco Co., 6 Wis.2d 371, 94 N.W.2d 697; Coakley v. Prentiss-Wabers Stove Co., 182 Wis. 94, 195 N.W. 388, 392; Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir., 183 F.2d 467; Huset v. J. I. Case Threshing Machine Co., 120 F. 865, 61 L.R.A. 303; Hyatt v. Hyster Co., D.C., 106 F.Supp. 676; (reversed on stipulation of parties, 2 Cir., 205 F.2d 421).

We see no reason why a manufacturer should be held less liable for its negligence in the design of a product than for its negligence in the manufacture or construction of a product. It is common knowledge that manufacturers sponsor widespread advertising in newspapers,

magazines, radio and television and other media in which advertising, aimed at ultimate users, they extol the utility, economy and safety of their products as to design and manufacture.

■ The fact that the title to a product may have passed a number of times from one intervening vendee to another, as in this case, does not affect a manufacturer's liability to an ultimate user. International Derrick & Equipment Co. v. Croix, 5 Cir., 241 F.2d 216; Smith v. Atco Co., 6 Wis.2d 371, 94 N.W.2d 697.

Appellee takes the position that when no privity of contract exists between the parties no cause of action exists in favor of a remote purchaser who is seeking recovery of damages from the manufacturer of a product which is allegedly defective in its design. Among the cases cited by appellee are: Yaun v. Allis-Chalmers Mfg. Co., 253 Wis. 558, 34 N.W.2d 853; Frank v. Cresent Truck Co., 3 Cir., 244 F.2d 101; and Amason v. Ford Motor Co., 5 Cir., 80 F.2d 265.

In its argument appellee asserts that most of the thirty-six cases cited by appellant have to do with negligence due to defects in the manufacture or construction of the article in question, not the question of negligence in the plan or design of the offending article. On this ground appellee undertakes to distinguish twenty-six of the cases cited by appellant.

However, appellee does concede that three of appellant's authorities tend to support the argument that a manufacturer may be guilty of negligence in the design of a machine which causes injury while being operated as designed. The three are: Brooks v. Allis-Chalmers Mfg. Co., 163 Cal.App.2d 410, 329 P.2d 575; Hyatt v. Hyster Co., D.C., 106 F.Supp. 676; and Matthews v. Lawnlite Co., Fla., 88 So.2d 299.

■ Since this is an appeal from a summary judgment it was not necessary for appellant to prove negligence and proximate cause, as a matter of law, in the matter of the design of the maintainer. It was necessary only to prove that the evidence raised fact issues as to negligence and proximate cause in regard to the design. Therefore we shall not pass on the questions whether negligence and proximate cause were established against appellee as a matter of law, though the evidence for practical purposes is uncontradicted. We shall simply hold that as opposed to the summary judgment the evidence was sufficient at least to raise fact issues as to appellee's negligence and proximate cause in the matter of the design of the maintainer in question. Appellant's first, second and third points on appeal are sustained.

We come now to appellant's fourth point and appellee's fourth counterpoint. Here the situation is quite different.

In its fourth point appellant asserts that it was error to render summary judgment against appellant because there were controverted issues of fact as to whether appellant had such knowledge of the defect or idiosyncrasy of the machine that it could properly be said to have voluntarily exposed itself to, assumed, or incurred the risk incident to the machine operation.

In its fourth counterpoint appellee says that it was proper to render summary judgment for appellee since the uncontradicted evidence established that appellant through its agents, servants, and employees, had actual knowledge of the alleged defect in the design of the maintainer in question and operated said machine in such condition for a period of seven years prior to the accident.

■ We agree with appellee. In passing on appellee's plea of violenti non fit injuria and incurred risk, we cannot escape the undisputed fact that appellant Texas Bitulithic Company through its supervisors, foreman and mechanics had full knowledge of the particular design which made

the maintainer dangerous even when used for the purposes for which it was intended. We point out that one supervisor or general foreman, one foreman, and one field mechanic, all employees of appellant, testified that they were well aware of the design in question. The blades on maintainers of the same model had blocked the clutches in two instances with one foreman and in one instance with the supervisor. The machine had been taken down for repairs and reassembled on several occasions in appellant's machine shop. Safety meetings were held regularly but no instructions or warnings of the dangerous design were given to employees. Hanks, the operator of the machine was not told of the design in question and was not aware of it. After the accident appellant provided safety devices for all its maintainers. Under the circumstances neither appellant nor appellee is in position to throw stones at the other.

The holding of our Supreme Court in McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391 seems to us applicable here.

"In determining liability, under the defense of voluntary exposure to risk, it is said that one cannot recover for injuries sustained while voluntarily exposing himself to a danger which he either does or should fully realize and appreciate."

Ordinarily volenti non fit injuria, assumed risk, incurred risk and contributory negligence are fact questions, but when the facts are undisputed they become law questions. McKee v. Patterson, supra; Riemenschneider v. Missouri Pacific Ry. Co., Tex.Civ.App., 316 S.W.2d 949; Hartford v. Coolidge-Locher Co., Tex.Civ. App., 314 S.W.2d 445; West Texas Utilities Co. v. Harris, Tex.Civ.App., 231 S.W. 2d 558; Wichita Valley Ry. Co. v. Fite, Tex.Civ.App., 78 S.W.2d 714; Stevens v. Allis-Chalmers Mfg. Co., 151 Kan. 638, 100 P.2d 723; Oettinger v. Norton Co., D. C., 160 F.Supp. 399 (aff., 3 Cir., 253 F.2d

712); Tyson v. Long Mfg. Co., 249 N.C. 557, 107 S.E.2d 170; "Restatement of Torts", Comment, § b, on page 1085 under § 398.

We overrule appellant's fourth point and sustain appellee's fourth counterpoint. It is our opinion that the trial court properly sustained appellee's motion for summary judgment.

The judgment of the trial court is affirmed.