Joseph ARREDONDO, Individually and as Representative of the Estate of David Arredondo, Deceased, Appellant,

v.

LINDLEY INTERNATIONAL TRUCKS, INC., Appellee.

No. 13–88–008–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1988.

Rehearing Denied Oct. 27, 1988.

Robert C. Hilliard, Kevin Grillo, Corpus Christi, for appellant.

William J. Collins, Andrew R. Black, Houston, Douglas Chaves, Chaves, Gonzales & Rodriguez, Corpus Christi, for appellee.

Before KENNEDY, UTTER and SEERDEN, JJ.

OPINION

KENNEDY, Justice.

This is a negligence case in which a summary judgment was granted in favor of Lindley International Trucks, Inc., the appellee and defendant below, on the ground that the Arredondos, the appellants and plaintiffs below, failed to raise a fact question regarding proximate cause. Appellant brings two points of error claiming that the trial court erred in granting the summary judgment because they raised a fact issue regarding proximate causation, and because the appellee's summary judgment proof was not uncontradicted. We reverse the summary judgment and remand this case to the trial court.

Appellant's decedent, David Arredondo, was the victim of a truck accident. Appellee manufactured a garbage truck which ran into Arredondo's pickup truck at the intersection of Ayers and Sacky in Corpus Christi. Appellee's representative had allegedly placed the garbage truck brake seals in backwards during routine maintenance. This faulty re-assembly caused differential fluid to leak onto the brakes and

decreased their ability to stop the garbage truck.

The driver of the garbage truck, Manuel Garcia, was deposed twice concerning his conduct and perceptions on the morning of the accident. Garcia's testimony is the only direct evidence before the court of the events of that morning. His testimony, however, is not entirely consistent in the two depositions, which were both on file at the time of the summary judgment hearing.

According to both depositions, Garcia noticed no reduction in braking ability or defect in the brakes on the morning in question. He was stopped at a stop sign on Sacky at its intersection of Ayers, with the intention of crossing Ayers. He noticed traffic both left and right. He noticed Arredondo in a red truck coming toward him on Ayers on the right at some distance. He looked left and waited for an opening. When there was no nearby traffic on the left, he looked right again and saw Arredondo at what appeared to be still a safe distance for Garcia to cross Ayers. Garcia then accelerated across Ayers and did not use the brakes again before the accident.

In his first deposition, Garcia claimed that as he was crossing Ayers, he saw Arredondo about to run into him and accelerated in an attempt to avoid him. Garcia did not use the brakes because he did not believe they would have stopped the truck from being hit by Arredondo. In his second deposition, however, Garcia claimed that after he began to accelerate from the stop, he did not see Arredondo again before the accident.

Appellant's theory of the accident was presented by summary judgment evidence consisting of the depositions, affidavits and verified reports of accident reconstruction expert, A.O. Pipkin, and the safety engineering expert, Gary Nelson. They concluded from the condition of the brakes, an examination of the site of the accident, and Garcia's testimony, that the brakes were substantially impaired at the time of the accident, but that the deterioration had been gradual enough that Garcia did not notice the change and had subconsciously learned to compensate for the decreased braking ability by changing his driving strategy. The defective brakes could have caused Garcia to react differently at two separate points between the time he was stopped on Sacky and the time the accident occurred.

Initially, under Nelson's theory, traffic conditions gave Garcia two practical options for crossing Ayers: first, to cross the first two northbound lanes and stop for an opening in the latter two southbound lanes; second, to speed across all four lanes with only small concurrent openings on southbound and northbound lanes, possibly forcing drivers on Ayers to anticipate the crossing and take evasive action. Then, again under Nelson's theory, the defective brakes caused Garcia to subconsciously change his braking habits in order to compensate for the reduced braking ability and the added distance needed to stop. Because he knew that the general condition of his brakes would not allow him to stop the truck safely in the center of the intersection, Garcia elected the latter, normally more dangerous option or strategy. Had Garcia taken the first option, he would have avoided the accident. Nelson, however, considers the reduction in braking ability caused by the appellee's negligence as only one of a number of considerations in determining the truck's overall braking ability, and that it may not have been the determinative factor in Garcia's decision to cross the intersection in the manner that he did. Thus, appellee's negligent installation of the brakes possibly caused Garcia to choose the unsafe strategy that led to Arredondo's death. Pipkin does not discuss this theory.

The second theory is that Garcia later had a second option at the time he saw Arredondo after pulling into the intersection: first, brake to stop short of Arredondo; second, accelerate to outrun Arredondo. This theory is contingent on Garcia's claim in his first deposition, that he saw Arredondo just before being hit. Under normal conditions Garcia would probably have chosen the former option and the brakes would have stopped him short of

Arredondo. Here again, however, Garcia chose the latter, more dangerous option, because he subconsciously realized that the brakes were performing below their normal abilities and would not stop the truck in time to avoid hitting Arredondo. As a result, the negligent installation of the brakes proximately caused Arredondo's death in a second way. Pipkin accepts this theory, without reservation, as a correct analysis of the cause of the accident. Nelson again, however, sees it as a possible cause, but believes that the accident may have been unavoidable, even with normal brakes, by the time Garcia perceived the danger.

In its motion for summary judgment, appellee argued that any negligent re-assembly of the brakes could not have been the proximate cause of the accident, because Garcia never even attempted to use the brakes to prevent the accident. Appellant complains in his first point of error that the trial court erred in granting the summary judgment, because a fact question existed on whether the faulty brakes proximately caused Garcia to react differently to traffic at the intersection in question than he normally would which, in turn, caused the accident.

A defendant who moves for a summary judgment has the burden of showing, as a matter of law, that no material issue of fact exists in the plaintiff's cause of action. *Griffin v. Rowden*, 654 S.W.2d 435, 436 (Tex.1983); *Luna v. Daniel Int'l Corp.*, 683 S.W.2d 800, 802 (Tex.App.—Corpus Christi 1984, no writ). In order to prevail, defendant must show that at least one of the elements of plaintiff's cause of action has been conclusively established against the plaintiff. *Sakowitz, Inc. v. Steck*, 669 S.W.2d 105, 107 (Tex.1984); *Laycox v. Jaroma, Inc.* 709 S.W.2d 2, 4 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *Luna*, 683 S.W.2d at 802.

■ Proximate cause includes two essential elements: (1) foreseeability, and (2) cause in fact. *McClure v. Allied Stores, Inc.*, 608 S.W.2d 901, 903 (Tex.1980); *Missouri Pacific Railroad Co. v. American Statesman*, 552 S.W.2d 99, 103 (Tex.1977);

*Farley v. M.M. Cattle Co.*, 529 S.W.2d 751, 756 (Tex.1975). Foreseeability is satisfied by showing that the actor, as a person of ordinary intelligence, should have anticipated the danger to others by his negligent act. *McClure*, 608 S.W.2d at 903; *Missouri Pacific*, 552 S.W.2d at 103; *Clark v. Waggoner*, 452 S.W.2d 437, 440 (Tex.1970). Cause in fact means that the act or omission was a substantial factor in bringing about the injury and without which no harm would have occurred. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 549 (Tex.1985); *McClure*, 608 S.W.2d at 903; *Texas & Pacific Railroad Co. v. McCleery*, 418 S.W.2d 494, 497 (Tex.1967).

Foreseeability does not require that the appellee should have foreseen that a particular action would happen in the exact manner that it did happen. All that is required is "that the injury be of such general character as might reasonably have been anticipated; and that the injured party be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen." *Nixon*, 690 S.W.2d at 551; *Carey v. Pure Distributing Corp.*, 124 S.W.2d 847, 849 (Tex.1939); *see also Harrison v. Harrison*, 597 S.W.2d 477, 484 (Tex.Civ. App.—Tyler 1980, writ ref'd n.r.e.); *Marshall v. Joske's, Inc.*, 581 S.W.2d 192, 194 (Tex.Civ.App.—San Antonio 1979, no writ). Foreseeability does not require that the actor anticipate just how the injuries will grow out of the particular dangerous situation. *Missouri Pacific*, 552 S.W.2d at 103.

■ In the present case, it was certainly foreseeable that defective brakes might cause an accident between the garbage truck and other vehicles on the same road. Accidents of the same general character might reasonably have been anticipated, and other driver's were reasonably foreseeable victims. The fact that the connection between the defective brakes and the accident in the present case was unusual, and perhaps even unforeseeable, does not make the accident an unforeseeable consequence of the defective brakes.

■ With regard to cause in fact, appellee contends that the appellant's theories of

causation are insufficient to show that the defective brakes were a substantial factor in causing the accident. In *American Cyanamid Co. v. Frankson*, 732 S.W.2d 648 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.), we held that the issue of causation is generally one of fact when scientific principles establish a traceable chain of causation from the condition back to the event, and that an expert opinion is legally sufficient evidence to establish a causal relationship between the condition and the event. *Id.*, at 657. On motion for summary judgment by the defendant, it is his burden to show as a matter of law that there was no reasonable scientific probability that his negligence caused the plaintiff's injuries. *Clark v. South Loop National Bank*, 740 S.W.2d 471, 473 (Tex. App.—Houston [1st Dist.] 1987, no writ). Moreover, it does not matter that Nelson was reluctant at this point in litigation to adopt his own theories as the most likely explanation for the accident. A plaintiff is not precluded from going to trial merely because his expert's summary judgment testimony does not specifically establish that his theory of recovery is more probable than not. *See Clark*, 740 S.W.2d at 473.

The interesting twist to the present case is that it is a subconscious psychological reaction that ties appellee's negligence to Garcia's actions in causing the accident. Appellee's negligence "conditioned" Garcia to adopt unsafe driving strategies. We are called to address whether experts' conclusions about Garcia's state of mind may form the basis for holding appellee liable for negligently exerting an influence on Garcia's subconscious, causing him to adopt unsafe driving strategies which in turn caused the accident in question. Can such a subtle manipulation of Garcia's reactions be considered a substantial factor in bringing about the injury?

We cannot say that acceptance of the appellant's theories in the present case would not create a potential for abuse. Any number of stimuli might be held responsible for "conditioning" a particular person to act in a harmful way toward another. In the present case, however, the stimulus is mechanical and the result objectively predictable. Like a reflex action, Garcia's response to progressively worsening brakes is without conscious thought on his part and does not depend upon an individual, planned decision on how to react. Garcia's reaction is consistent with a pattern that the experts have found among other drivers in the same situation. We cannot say that well-documented human responses of this nature cannot be used to link the defendant's negligence as a substantial factor in causing the plaintiff's injuries. The so-called "dram shop" cases are another example. The defendant's negligence in serving a third-party alcoholic drinks to the point of intoxication places the third-party in a condition in which he is likely to exercise poor judgment and driving skills, which in turn subjects the defendant to liability for harm to the plaintiff caused by the third-party's intoxication. *See El Chico Corp. v. Poole*, 732 S.W.2d 306, 313 (Tex.1987). In both cases, the defendant's negligence alters the third-party's reactions such that he poses a predictable danger to others.

Appellee failed to conclusively establish a lack of proximate cause. Therefore, we hold that the trial court erred in granting summary judgment. Appellant's first point of error is sustained. We do not address appellant's remaining points of error.

The judgment of the trial court is reversed and this case is remanded for trial.